[Crim. No. 5968.   In Bank.   Nov. 30, 1956.]

In re PLEAS SCAGGS, on Habeas Corpus.

Franklin H. Williams, John W. Bussey, W. Lawrence Oliver and Lawrence Speiser for Appellant.

Edmund G. Brown, Attorney General, and Clarence A. Linn, Assistant Attorney General, for Respondent.

GIBSON, C. J.—This is a proceeding in habeas corpus to admit Scaggs to bail pending his appeal from a conviction of receiving stolen property in violation of section 496 of the Penal Code. The questions presented are whether the trial court exercised its discretion in refusing to admit him to bail and, if so, whether the refusal constituted an abuse of discretion.

After the verdict was returned against Scaggs, he remained at large on bail for about six weeks while his motion for probation was pending. On May 15, 1956, the court denied probation in accordance with the recommendation of the probation officer's report and sentenced Scaggs to be confined in state prison for the term prescribed by law. His motion for bail pending appeal was also denied. Execution of the sentence was stayed through May 31.

On May 29, a second motion for bail was made. It was argued that Scaggs owned a hotel which was being converted into apartments and that it was mortgaged in the amount of $72,000 and would be lost by foreclosure unless he were admitted to bail. The motion was denied.

On July 13, Scaggs made a third motion for bail, and, by way of indicating additional circumstances which had arisen after the court's ruling on May 29, he pointed to the illness of his wife, who was in the hospital for surgery, and to our decision in *In re Brumback*, 46 Cal.2d 810 [299 P.2d 217]. In again denying the motion, the court stated, ''Well, as I read the Brumback case, they hold what we felt was the law at the time of the original ruling on this application for bail. The trial court had it within its discretion to admit or deny admission to bail on appeal. . . . The Court exercised its discretion at that time and, in consideration of all the circumstances, decided that no order fixing bail would be made. . . . I don't think the situation has changed, at all. Nothing substantial has been brought to the attention of the Court that would warrant granting of bail to this Defendant.'' In response to a remark by counsel that the court had stated that granting bail ''in these cases'' was contrary to its policy,

the court said, "In this type of case . . . Where the facts were as they appeared in this case, I would not grant bail."

█ Before conviction, a defendant charged with a felony not punishable with death is entitled to be admitted to bail "as a matter of right," but, after conviction, his admission to bail is a "matter of discretion," unless only a fine is imposed. (Pen. Code, §§ 1270, 1271, 1272.*) This important difference in the status of a defendant before and after conviction is one of long standing in both the statutes and judicial decisions of California and arises from the fact that, upon conviction, the defendant loses the benefit of the presumption of innocence and is presumed to be guilty. (Crim. Prac. Act (1851), §§ 509, 510, 512; *Ex parte Voll* (1871), 41 Cal. 29, 32 [holding that, so far as cases *after conviction* were concerned, the provision of the 1849 Constitution that "All persons shall be bailable by sufficient sureties, unless for capital offenses when the proof is evident or the presumption great" was not intended to alter the common-law rule that applications for bail were addressed to the discretion of the court]; *Ex parte Brown* (1885), 68 Cal. 176, 177 [8 P. 829] [reaching the same result with respect to that provision as incorporated, without change in language, in section 6 of article I of the 1879 Constitution].)

█ It is thus clear that Scaggs, having been convicted of a felony and sentenced to imprisonment, was not entitled to be admitted to bail as a matter of right but was compelled to address himself to the discretion of the court. In *In re Brumback*, 46 Cal.2d 810 [299 P.2d 217], after recognizing that the discretion in such a case belongs primarily to the trial court and is to be exercised in the light of all of the attending circumstances, we held that the trial court may not

---

*Section 1270 of the Penal Code provides: "A defendant charged with an offense punishable with death cannot be admitted to bail, when the proof of his guilt is evident or the presumption thereof great. The finding of an indictment does not add to the strength of the proof or the presumptions to be drawn therefrom."

Section 1271 of the Penal Code provides: "If the charge is for any other offense, he may be admitted to bail before conviction, as a matter of right."

Section 1272 of the Penal Code provides: "After conviction of an offense not punishable with death, a defendant who has appealed may be admitted to bail:

"1. As a matter of right, when the appeal is from a judgment imposing a fine only.

"2. As a matter of right, when the appeal is from a judgment imposing imprisonment in cases of misdemeanor.

"3. As a matter of discretion in all other cases."

decline to exercise that discretion. Although the court in the present case used language on May 29 which might be construed as indicating that it was declining to exercise its discretion, it undertook to dispel any doubt in that regard by stating on July 13 that, in previously denying the motion for bail, it had applied the law as set forth in the Brumback case. In any event, it is immaterial whether the court failed to exercise its discretion on May 29, since the record shows that it did so on July 13 in making its final ruling on the motion for bail.

There remains the question of whether the refusal to admit Scaggs to bail constituted an abuse of discretion. ▮ Although, as we have said, the primary purpose of bail is to assure the presence of the defendant in court when required (see *In re Brumback,* 46 Cal.2d 810, 813 [299 P.2d 217]), it does not, of course, follow that other matters may not be considered in determining whether a convicted defendant should be retained in custody pending his appeal. Obviously, one important consideration is whether there is any danger that, if released, he would continue to commit crime. ▮ In an affidavit filed in this proceeding, Judge Caulfield, who presided at the trial and denied the motions for bail, states that there were "strong indications that he [Scaggs] had engaged in other criminal activities before, during and even after the trial." As additional factors upon which his denial of the motions was based, Judge Caulfield includes the unfavorable recommendation of the probation officer, the fact that, after his conviction, Scaggs was at liberty for several weeks during which he had an opportunity to put his affairs in order, the judge's view that there was no convincing evidence to support the claim of economic hardship, and his belief that no substantial errors in the trial of the case would be shown on appeal. We are satisfied that there was no abuse of discretion in refusing to admit Scaggs to bail.

The order to show cause is discharged, and the writ is denied.

Shenk, J., Traynor, J., and Spence, J., concurred.

McComb, J., concurred in the order denying the writ.

CARTER, J.—I dissent.

It appears from the record before us that Pleas Scaggs was found guilty of violating the provisions of section 496

of the Penal Code (receiving and withholding certain stolen property) in the Superior Court of the City and County of San Francisco on March 27, 1956. A motion for new trial was made and denied on April 4, 1956, and Scaggs was sentenced to prison for the term prescribed by law on May 15, 1956. He was granted a stay of execution until May 31, 1956. Notice of appeal from the judgment of conviction was filed on May 21, 1956, and the appeal is being diligently prosecuted. Application for probation was made and denied. On the day sentence was pronounced, a motion was made in the trial court for an order admitting Scaggs to bail pending appeal. This motion was summarily denied. On May 29, 1956, a second motion for the admission of Scaggs to bail pending appeal was made in the trial court and the record discloses the following:

"MR. DUANE: Well, first of all, your Honor please, the matter of health is not involved in this, at all, but that is not the law. As the Court has said that where a condition is so serious that bail should be granted, then it should be granted.

"THE COURT: "Well, health isn't involved here.

"MR. DUANE: No part of this. This is a matter purely within your Honor's discretion, that is all.

"THE COURT: *Within the limits set down by the decisions.*

"MR. DUANE: What is that, your Honor?

"THE COURT: *Within the limit set down by the decisions. One is newly discovered evidence and the other is health.*

"MR. DUANE: Yes, that is right, and also, any others.

"THE COURT: I will state right now that I don't consider health a very controlling cause, because they can secure just as good if not better medical care in custody, as they can out.

"MR. DUANE: That is right, but aside from that, Counsel is incorrect when he says that this work has been going on for four years; that is not true. I have gone up there, seen the place. I know what goes on and I know Scagg himself has been working there and he has workmen there, but since this thing happened he hasn't been able to pay any help and he has got this tremendous deed of trust staring him in the face, right now.

"THE COURT: Economic hardship is not one of the reasons for exercising discretion.

"MR. DUANE: No, except this, if the Court please, the courts have held that where there are extraordinary circumstances— it doesn't go into detail as to what the circumstances may be—but there are a couple of cases referred to, propositions

where a man was supposed to have been murdered and after the conviction he showed up and a couple of cases of that kind, but in this case, as I say, there is no one to take care of these affairs for him, to work out these obligations, and he will just lose $72,000 and he will lose the property.

"THE COURT: The matter is submitted?

"MR. BERMAN: Submitted.

"THE COURT: Mr. Duane, you appeal to the Court's fairness. There is a rule of moral law, I understand, that we have to be just before we are generous and there is a rule of law that controls the Court that we have to conform to the law before we consider any other element.

"MR. DUANE: That is right, and the law presumes fairness in laying down its principles.

["THE COURT:] The case we have before us is a case of a convicted felon. All the presumptions of innocence are gone. I was fair to him. I didn't order him into custody immediately upon conviction. I could have done that. I had this other situation in mind. I also had in mind the fact that his accomplice in crime, Mr. Randolph, was at liberty and I didn't see fit to take his liberty away from him at that time. And I assume that the six or seven weeks he had from the time he became a convicted felon until sentence was formally passed upon, that he would act as a prudent man and get his business affairs in order, if his business affairs are of such shape that he is going to be prejudiced by going to San Quentin. That situation is of his making; not of yours or of mine.

"MR. DUANE: Well, it is only a question of permitting him to remain at liberty.

"THE COURT: I know that, but justice delayed is justice denied and I am not going to be a party to this man's—— a convicted felon—— roaming the streets for a month or two months until this case is decided on appeal.

"The motion for bail is denied." (Emphasis added.)

On July 13, 1956, counsel for Scaggs again moved the trial court that Scaggs be admitted to bail pending appeal, and the record discloses the following:

"MR. DUANE: There are only two new features in it. One is that Mrs. Scaggs, the wife of the Defendant, is in the hospital for an operation and in view of the Supreme Court decisions on the Brumback case we feel that we have a good meritorious argument in support of our application.

"THE COURT: Well, as I read the Brumback case, they

hold what we felt was the law at the time of the original ruling on this application for bail. The trial court had it within its discretion to admit or deny admission to bail on appeal.

"MR. DUANE: Yes.

"THE COURT: The Court exercised its discretion at that time and, in consideration of all the circumstances, decided that no order fixing bail would be made.

"Now, the only additional features you bring to the Court's attention this morning are, first, the illness of Mrs. Scaggs, and second, the Brumback decision.

"MR. DUANE: Well, the other matters have been gone into.

"THE COURT: Yes.

"MR. DUANE: I have set up there the financial condition, the loss of this hotel business, loss of the property, the whole thing. There is some $64,000 involved in it and he will lose the whole thing. Now, it is not going to do anyone any harm to permit him to remain on bail pending the appeal, at which time he can get his affairs all cleared up.

"THE COURT: I don't think the situation has changed, at all. Nothing substantial has been brought to the attention of the Court that would warrant granting of bail to this Defendant.

"MR. DUANE: Well, your Honor made the statement that it was contrary to your policy to grant bail in these cases.

"THE COURT: In this type of case.

"MR. DUANE: Yes.

"THE COURT: Where the facts were as they appeared in this case, I would not grant bail.

"MR. DUANE: And I don't believe that is a proper use of discretion, frankly.

"THE COURT: Well, you can ask the Appellate Court to review the Court's discretion. That is perfectly proper. That would be a proper exercise of discretion on your part."

Thereafter application for a writ of habeas corpus for and on behalf of Scaggs for bail on appeal was submitted to the District Court of Appeal and denied without an opinion.

On September 7, 1956, petition for a writ of habeas corpus for bail on appeal on behalf of Scaggs was presented to this court and an order to show cause why he should not be admitted to bail was issued and the matter came on for hearing before this court on October 10, 1956.

The record before us discloses that Scaggs has been for many years a resident of the city and county of San Francisco and is the owner of real property of the estimated value of

$100,000; that he is married and lives with his wife in an apartment owned by him; and that he has no prior criminal record.

At the hearing before this court the attorney general presented the affidavit of Honorable C. Harold Caulfield, the judge who presided at the trial of Scaggs and ruled on the various motions for the admission of Scaggs to bail. In said affidavit the judge states as follows:

"At the time of sentence a motion for defendant Scaggs' release on bail pending appeal was presented and urged on the ground that he was engaged in converting a hotel into an apartment house, that this work was incomplete, and that economic hardship and financial loss would result unless he were allowed to remain on bail. I gave careful consideration to the representations thus made and the evidence in support thereof. The record shows that the work referred to had been in slow process for several years and nothing about it appeared to be so unique as to prevent adequate arrangements for its conservation and supervision from being made. The defendant's wife and others made personal representations to the court in connection with this claim of economic hardship, but neither the claim nor the representations thus made were supported by substantial, convincing evidence. On the other hand I considered the probation report, the apparent unreliability and dishonesty of the defendant, and certain strong indications that he had engaged in other criminal activities before, during and even after the trial, as factors weighing against his release. Lastly, in my judgment there were no such substantial errors of law involved in this trial as to present a substantial issue on appeal.

"Considering all these factors, it was determined that the interests of society would best be served by ordering the defendant into custody and such order was made on May 15, 1956.

"It was thereafter represented that the defendant required still further time in which to take care of his personal affairs, and although in my judgment he had had ample time to make such arrangements, he was granted a stay of execution for a period of 14 days to and including May 29, 1956.

"Subsequently there was presented an additional motion for an order fixing bail on appeal. This motion was based on the same representations which had previously been considered. Nothing new was presented. Under the circumstances of this case I did not find such alleged hardship a

sufficient reason, considering the other factors involved, for permitting this defendant to be on bail pending appeal. In the exercise of my discretion I therefore denied the motion."

We have recently had before us a similar application in a very similar case (*In re Brumback*, 46 Cal.2d 810 [299 P.2d 217], decided June 29, 1956) in which this court unanimously declared: "It is settled that the primary discretion belongs to the trial judge and that it is a sound legal discretion to be exercised in the light of all attending circumstances. [Citations.] *He should recognize that the primary purpose of bail, before or after conviction, is practical assurance that defendant will attend upon the court when his presence is required.* Where the trial judge has passed upon the merits of the application his ruling will not be disturbed unless a manifest abuse of discretion appears [citations] or 'circumstances of an extraordinary character have intervened since conviction which make such action obviously proper.' . . .

"There appears to be no case in which it has been held that this test limits the discretion of the trial judge. Were that rule applied as the trial judge did in this instance it would virtually nullify section 1272, subdivision 3, for it would preclude a successful early application for bail and necessitate defendant's serving part of his term in the penitentiary or sojourning in jail until some new and untoward and unexpected circumstance, like illness or discovery of new and convincing evidence, should eventuate. Absence of intervening extraordinary circumstances cannot prevent the trial judge from acting or excuse his failure to act, although their presence properly may influence his discretion. It follows that the judge in the present instance mistakenly declined to exercise his discretion.

"It is true that the primary discretion in the matter of bail on appeal resides in the trial court but it is not correct to say that '[i]t always has been the law in this state that the discretion referred to in section 1272 of the Penal Code . . . is not a discretion conferred upon the appellate courts,' as stated in *People* v. *Davis*, 67 Cal.App.2d 837, 839 [155 P.2d 675]; and the cases cited on page 839 do not support that proposition. There is no question of power here presented. The Constitution (art. VI, §§ 4 and 4b) confers upon the Supreme Court and the District Courts of Appeal and each individual justice the right to issue the writ of habeas corpus, and Penal Code, section 1490, makes it a proper avenue for obtaining bail. The requirement of intervening extraordinary

circumstances is a self-imposed criterion for the guidance of appellate courts and individual appellate justices in the exercise of a sound judicial discretion. The cardinal rule is that manifest abuse of discretion must appear as a basis for the exercise of a sound discretion by an appellate court or justice; the intervening circumstance test is a supplementary one designed to enable the court of review to do justice even though it has become too late for the trial judge to do so. It operates by way of enlargement of the concept of permissible discretion and not as a restriction upon the power of trial or appellate court. In any event that test is not exclusive. The trial judge may grant bail in his discretion though no intervening circumstance has occurred and the appellate court may act where an abuse of discretion appears regardless of the existence of intervening extraordinary circumstances. But if they have occurred affirmative action by the upper court may be appropriate though no abuse of discretion in the trial court appears. In the present instance no discretion was exercised below and no intervening circumstances now appear. Appellant is entitled to have his application considered on the merits but not in this court at this time." (Emphasis added.)

Applying the foregoing rules to the case at bar, I am of the opinion that the trial judge abused his discretion in refusing to admit Scaggs to bail pending appeal. The offense of which Scaggs was convicted is clearly a bailable offense (see Cal. Const., art. I, § 6; Pen. Code, § 1272). There is nothing in the record from which a reasonable mind could conclude that Scaggs, if admitted to bail in a reasonable sum, would not attend upon the court when his presence is required. In fact, the record discloses that Scaggs remained at large for a period of over two months after conviction upon the bail which he had posted prior to conviction. In my opinion it was a manifest abuse of discretion on the part of the trial judge to refuse to fix bail in any sum whatsoever in a case of this character. It is apparent from the remarks of the trial judge at the time he passed upon the various motions for the admission of Scaggs to bail, that he did not give consideration to the primary purpose of bail, but had in mind subjecting Scaggs to punishment forthwith regardless of the outcome of the appeal which he had taken from the judgment of conviction. At no time did the trial judge intimate that his reason for refusing Scaggs bail pending appeal was that he entertained the belief that Scaggs would fail to attend upon the court when his presence was required. It is obvious that the

judge did not entertain such a belief because he permitted Scaggs to remain at large after conviction for over two months and over two weeks after pronouncing sentence on the bail which Scaggs had posted prior to trial. In fact the record discloses that the only reasons given by the trial judge for refusing Scaggs bail pending appeal were that he wanted him to go to prison pending appeal because ''Justice delayed is justice denied and I am not going to be a party to this man's— a convicted felon—roaming the streets for a month or two months until his case is decided on appeal'' and that it was against his policy to grant bail in cases of this character. He also stated in his affidavit that: ''I considered the probation report, the apparent unreliability and dishonesty of the defendant, and certain strong indications that he had engaged in other criminal activities before, during and even after the trial, as factors weighing against his release. Lastly, in my judgment there were no such substantial errors of law involved in this trial as to present a substantial issue on appeal.'' I submit that the foregoing reasons are inadequate to justify the refusal to grant bail in a case of this character.

In my long years of experience in law enforcement it was my observation that it was not at all unusual for convicted persons to be admitted to bail pending appeal in cases of this character, and I have no recollection of any of such persons ever failing to attend upon the court when his presence was required. In my opinion the only realm for the exercise of discretion in a case such as this is the amount which the trial judge believes to be commensurate with the risk assumed by the admission of the prisoner to bail, and not whether bail should be granted or refused.

We may take judicial notice that many criminal cases are reversed on appeal; that some of the defendants in such cases are never retried and others are acquitted upon retrial. While it is true that every judgment of a court of record carries a presumption of validity, that presumption does not become conclusive until the judgment becomes final. A person convicted of a felony is not a felon as a matter of law until the judgment of conviction becomes final. Appellate courts were established to review judgments of trial courts and set aside those which were not obtained pursuant to the rules of law declared in the Constitution and statutes of this state, and every person convicted of a crime has the right of appeal, and when an appeal is validly perfected and prosecuted, his conviction is not final until it is affirmed on appeal. It is a

salutary principle of American justice which the framers of both the federal and our state Constitutions wisely engrafted upon our fundamental law that all persons shall be bailable by sufficient sureties, unless for capital offenses when the proof is evident or the presumption great, and that excessive bail shall not be required (Cal. Const., art. I, § 6). This principle has been embraced in the Declaration of Rights of our Constitution since its adoption and was intended as a fundamental safeguard to the liberty of the citizens of this state. It should be invoked and applied in all proper cases to the end that a person who is so unfortunate as to be unjustly convicted of crime may not be required to endure penal servitude until his conviction has become final.

For the foregoing reasons I would grant the writ of habeas corpus in the case at bar and order that Scaggs be released on bail in the sum of $10,000 pending his appeal from the judgment of conviction to which he is now subjected.

SCHAUER, J., Dissenting.—In my view, upon the record presented to us, the defendant is prima facie entitled to be admitted to reasonable bail upon appeal. I find no factual basis for the implied finding that no conceivable amount of bail would secure the presence of defendant and his amenability to the process of the court when required. Neither does the record support any other tenable ground for denying bail. Certainly the indicated objective of punishing the defendant is not a valid ground for jailing him pending his appeal. Consequently, the absolute denial of an order fixing bail is an abuse of discretion (Cal. Const., art. I, § 6; *In re Brumback* (1956), 46 Cal.2d 810 [299 P.2d 217]).