[Crim. No. 12427. First Dist., Div. One. June 5, 1974.]

THE PEOPLE, Plaintiff and Respondent, v.
HORACE EUGENE TURNER, Defendant and Appellant.

## COUNSEL

Geoffrey Brown, under appointment by the Court of Appeal, for Defendant and Appellant.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, Edward P. O'Brien, Assistant Attorney General, Sanford Svetcov, Michael D. Whelan, W. Eric Collins and William D. Stein, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**SIMS, J.**—Defendant was convicted by jury verdicts of two counts of rape by force or violence (Pen. Code, § 261, subd. 2) with prior convictions for forgery (Pen. Code, § 470) and receiving stolen property (Pen. Code, § 496). He has appealed from the judgment sentencing him to concurrent sentences in state prison. In a brief filed while these proceedings were pending he principally complains of the alleged misconduct of the prosecutor. ■ A hearing was granted on his motion for bail pending appeal in order to consider the effect of recent statements of the state Supreme Court which indicated that the right to bail on appeal might be commensurate with the right to bail before conviction. An examination of the per-

tinent precedents indicates that such is not the case; that admission to bail on appeal is a matter of discretion; and that there was no abuse of discretion in denying bail to the defendant in this case. The motion must be denied.

The California Constitution as adopted in 1849 provided: "All persons shall be bailable by sufficient sureties unless for capital offenses, when the proof is evident, or the presumption great." (Art. I, § 7.) In January 1871, the state Supreme Court ruled, "We think, however, that the clause of the Constitution cited is only designed to alter this rule of the common law as to certain criminal cases before conviction; and that the matter of bail after conviction is still left discretionary, as it was at common law, with the modifications wrought by the statute of this State. We are of [the] opinion that the Constitution, in declaring bail to be a matter of right, contemplated only those cases in which the guilt of the party had not been already judicially ascertained; cases in which the prisoner as yet stood upon his plea of not guilty, supported with all the presumptions of innocence with which the law delights to surround him. But when his trial has been had, and his plea proven false, the law will not stultify itself by presuming him other than that it has itself adjudged him to be." (*Ex parte Voll* (1871) 41 Cal. 29, 32.)

On May 7, 1879, the People of the State of California incorporated the same language in section 6 of article I of our present Constitution. In *Ex parte Brown* (1885) 68 Cal. 176 [8 P. 829], the court pointed out that the same rule applied to the reenacted language—". . . the guaranty of bail as a matter of right extends only to those cases where the party has not already been convicted," citing *Ex parte Voll, supra* (68 Cal. at p. 177).

The rule of the earlier cases was reiterated in *In re Scaggs* (1956) 47 Cal.2d 416 [303 P.2d 1009], where the court stated: "Before conviction, a defendant charged with a felony not punishable with death is entitled to be admitted to bail 'as a matter of right,' but, after conviction, his admission to bail is a 'matter of discretion,' unless only a fine is imposed [citation]. This important difference in the status of a defendant before and after conviction is one of long standing in both the statutes and judicial decisions of California and arises from the fact that, upon conviction, the defendant loses the benefit of the presumption of innocence and is presumed to be guilty [citing Criminal Practice Act of 1851, *Ex parte Voll, supra*, and *Ex parte Brown*]." (47 Cal.2d at p. 418.)

In *In re Underwood* (1973) 9 Cal.3d 345 [107 Cal.Rptr. 401, 508 P.2d 721], the trial court denied bail to a defendant charged with attempted murder and related offenses arising out of an attempted bombing, on the

theory that his release would jeopardize the safety of the community (9 Cal.3d at p. 347). The court held that there was no "public safety" exception to the right to bail which is conferred by section 6 of article I of the state Constitution. In so doing the chief justice did state, "The purpose of bail is to assure the defendant's attendance in court when his presence is required, whether before or *after conviction. (People* v. *United Bonding Ins. Co.* (1971) 5 Cal.3d 898 . . . ; *In re Newbern* (1961) 55 Cal.2d 500 . . . ; see also *In re Brumback* (1956) 46 Cal.2d 810 . . .) Bail is not a means for punishing defendants (*Sawyer* v. *Barbour* (1956) 142 Cal.App.2d 827 . . .) nor for protecting the public safety. Such objectives are provided for otherwise." (*Id.*, p. 348, italics added.) The first case cited dealt with the proper procedure for declaring a forfeiture of bail posted prior to conviction (see 5 Cal.3d at p. 907). *In re Newbern* dealt with both bail on appeal and bail on pending charges, but the appeal involved was from the conviction of a misdemeanor (55 Cal.2d at p. 503; and see Pen. Code, § 1272, subd. 2). *In re Brumback* covers the situation governing in the case of bail pending appeal from a felony conviction (46 Cal.2d at p. 813. See also Pen. Code, § 1273, first subd. Third). *Sawyer* v. *Barbour* deals with a penalty assessment in addition to bail posted prior to conviction in respect of traffic offenses and is not helpful on the issue here (see 142 Cal.App.2d at pp. 833-834.) *In re Underwood* should not be interpreted as conferring a constitutional right to bail on appeal. It merely points out that in granting bail, whether as a matter of right or as a matter of discretion, the punishment of the defendant is not a criteria, and it suggests that other means should be taken for protecting the public safety.

This conclusion is strengthened by examination of other pronouncements of the court. Tobriner, J., in dissenting in *In re Tucker* (1971) 5 Cal.3d 171 [95 Cal.Rptr. 761, 486 P.2d 657], stated, "Since the parolee has already been convicted of a felony and sentenced to prison, he has lost the presumption of innocence and the right to bail. (See *In re Scaggs* (1956) 47 Cal.2d 416, 418 . . .)" (5 Cal.3d at p. 203.) *In re Law* (1973) 10 Cal.3d 21 [109 Cal.Rptr. 573, 513 P.2d 621], produced a unanimous opinion authored by the chief justice in which he stated, "Article I, section 6, of the California Constitution, upon which petitioner [a parolee who claimed the right to bail while in a parole hold status] particularly relies, states that 'All persons shall be bailable by sufficient sureties, unless for capital offenses when the proof is evident or the presumption [is] great.' This provision was intended to abrogate the common law rule that bail was a matter of judicial discretion by conferring an absolute right to bail except in a narrow class of cases. (See *In re Underwood* (1973) 9 Cal.3d 345 . . . ; *Ex parte Voll* (1871) 41 Cal. 29, 32.) However, it is clear on

analysis of both the Constitution and statutory provisions which implement it that the right to bail, while absolute, pertains only to persons *incarcerated on a charge of the commission of a criminal offense.* (See *Aguilera* v. *California Dept. of Corrections* (1966) 247 Cal.App.2d 150, 153 . . .)

"The constitutional provision, although it first states that 'All persons' shall be bailable, then makes an exception 'for capital offenses when the proof is evident or the presumption [is] great.' The phrase 'the proof is evident or the presumption [is] great.' can be relevant only as a limitation on the bailable nature of a charged but unproven capital offense; otherwise the proof and presumption would have been conclusively and finally established. The provision thus purports to deal not with all persons in an unlimited sense but rather with all persons charged with criminal offenses as only then does the whole of the language have relevancy. *We have heretofore stated that the purpose served by the provision was 'fixing bail before trial.'* (*People* v. *Anderson* (1972) 6 Cal.3d 628, 657, fn. 45 . . .)" (10 Cal.3d at pp. 25-26, italics added.)

The reiteration of the quote from *In re Underwood, supra,* in *In re Boyle* (1974) 11 Cal.3d 165 [113 Cal.Rptr. 99, 520 P.2d 723], a case dealing with the right to bail prior to conviction, does not lend further strength to the conclusion that bail is a matter of right after conviction. It remains, as provided in the statute, "a matter of discretion." (Pen. Code, § 1272, subd. 3.)

Application of the rules for the exercise of that discretion as promulgated in *In re Scaggs, supra,* and *In re Brumback,* to the record in this case fails to reveal any grounds for relief. In *Scaggs* the court said: "Although, as we have said, the primary purpose of bail is to assure the presence of the defendant in court when required (see *In re Brumback,* 46 Cal.2d 810, 813. . .), it does not, of course, follow that other matters may not be considered in determining whether a convicted defendant should be retained in custody pending his appeal. Obviously, one important consideration is whether there is any danger that, if released, he would continue to commit crime." (47 Cal.2d at p. 419.) *In re Underwood,* as quoted above, (9 Cal.3d at p. 348), may throw some doubt on the use the criterion set forth in the last sentence, but it is unnecessary to so determine in this case.

■ California Rules of Court, rule 32(b) provides as follows: "An application to the reviewing court for bail or to reduce bail on an appeal pending therein shall be made on such notice to the district attorney and the Attorney General as the court may determine, and shall include a showing that proper application for bail or a reduction of bail was made

to the superior court and that such court unjustifiably denied the application."

In order to determine whether the trial court unjustifiably denied the petitioner's application for bail we have examined the record in connection with such application. It consists of a short statement by the petitioner's attorney.[1] On that record we cannot say that the court abused its discretion in denying bail. Petitioner's application for bail before this court is accompanied by his attorney's declaration which, insofar as the petitioner's background is concerned, would appear to be in part hearsay. Since there is no showing that these matters were presented to the trial court in any form it is unnecessary to review their sufficiency. The application for bail is denied.

Elkington, J., concurred.

**MOLINARI, P. J.**—I dissent. In the light of recent Supreme Court decisions (*In re Boyle,* 11 Cal.3d 165 [113 Cal.Rptr. 99, 520 P.2d 723]; *In re Law,* 10 Cal.3d 21 [109 Cal.Rptr. 573, 513 P.2d 621]; and *In re Underwood,* 9 Cal.3d 345 [107 Cal.Rptr. 401, 508 P.2d 721]) I apprehend the law of this state to be that except for capital offenses of the class defined in the new penalty legislation which became effective on January 1, 1974, a defendant is entitled to bail as a matter of right both before and after conviction, and that this right includes admission to bail pending appeal.

The thrust of *Boyle, Law* and *Underwood* is that article I, section 6 of the California Constitution mandates that, except for capital offenses, a defendant is entitled to be released on bail as a matter of right. This provision of the California Constitution, in pertinent part, provides: "All persons shall be bailable by sufficient sureties, unless for capital offenses when the proof is evident or the presumption great. Excessive bail shall not be required, . . ." This provision was enacted into the Constitution of 1849 (art. I, §§ 6, 7) and was reenacted into the 1879 Constitution.

It should be noted here that no distinction or differentiation is made in

---

[1]"We would ask for reasonable bail pending appeal. I would state that Mr. Turner when he was out of custody has made numerous court appearances always on time. Never, to my knowledge, had a failure to appear. He remained throughout the trial proceedings. He was always present. It would be my impression from that knowledge that Mr. Turner would be present and would remain himself, in the area and available for any further processes of the court pending appeal. And I would ask the Court to grant reasonable bail pending that appeal."

the subject constitutional provision as to bail before or after conviction; nor is any reference made specifically to bail pending appeal. The distinction between bail before and after conviction is of legislative origin and results from the enactment of statutes purportedly made in implementation of the constitutional provision. Thus, in implementation of the 1849 Constitution we find Penal Code sections 1270, 1271 and 1272[1] enacted in 1872. Section 1270[2] provided, in pertinent part, that "A defendant charged with an offense punishable with death cannot be admitted to bail, when the proof of his guilt is evident or the presumption thereof great. . . ." Section 1271[3] provided: "If the charge is for any other offense, he may be admitted to bail before conviction, as a matter of right." Section 1272[4] provided: "After conviction of an offense not punishable with death, a defendant who has appealed may be admitted to bail: 1. As a matter of right, when the appeal is from a judgment imposing a fine only. 2. As a matter of discretion in all other cases."

Sections 1270 and 1271 have not been amended since their enactment in 1872. Section 1272 was amended in 1909 (Stats. 1909, ch. 360, § 1, p. 59) to read as follows: "After conviction of an offense not punishable with death, a defendant who has appealed may be admitted to bail. 1. As a matter of right, when the appeal is from a judgment imposing a fine only. 2. As a matter of right, when the appeal is from a judgment imposing imprisonment in cases of misdemeanor. 3. As a matter of discretion in all other cases." In 1971, section 1272 was amended to provide, additionally, that a person who has made application for probation may be admitted to bail, pending such application, in cases of misdemeanors. (Stats. 1971, ch. 1790, § 3, p. 3856.)[5]

[1]Unless otherwise indicated, all statutory references are to the Penal Code.

[2]Based on Statutes of 1850, chapter 119, section 542, page 315, and Criminal Practice Act, section 510. (Stats. 1851, ch. 29, § 510, p. 268, as amended by Stats. 1865-1866, ch. 346, §1, p. 418.)

[3]Based on Statutes of 1850, chapter 119, section 541, page 315, and Criminal Practice Act, section 509. (Stats. 1851, ch. 29, § 509, p. 268, as amended by Stats. 1863, ch. 127, § 1, p. 151.)

[4]Based on Statutes of 1850, chapter 119, section 544, page 315, and Criminal Practice Act, section 512. (Stats. 1851, ch. 29, § 512, p. 268.)

[5]Section 1272 now provides: "After conviction of an offense not punishable with death, a defendant who has made application for probation or who has appealed may be admitted to bail: 1. As a matter of right, before judgment is pronounced pending application for probation in cases of misdemeanors, or when the appeal is from a judgment imposing a fine only. 2. As a matter of right, before judgment is pronounced pending application for probation in cases of misdemeanors, or when the appeal is from a judgment imposing imprisonment in cases of misdemeanors. 3. As a matter of discretion in all other cases."

In reaching the conclusion leading to this dissent I am not unmindful that the majority opinion finds support in decisions of the California Supreme Court and that under the doctrine of *stare decisis* decisions of that court are binding upon and must be followed by all the state courts in California. (See *Auto Equity Sales, Inc.* v. *Superior Court,* 57 Cal.2d 450, 455 [20 Cal.Rptr. 321, 369 P.2d 937].) I am of the opinion, however, that *Boyle, Law* and *Underwood,* although not expressly overruling the prior decisions relied upon by the majority, have, by implication, rejected the rationale of these decisions. Upon this premise I conclude that if the reason for the rule espoused by the prior decisions has ceased the rule itself is inapplicable. (See Civ. Code, § 3510.)

The decisions relied upon by the majority find their genesis in *Ex parte Voll* (1871) 41 Cal. 29. It, therefore, becomes necessary to trace the genealogy of *Voll's* progeny. Before doing so due consideration must be given to the progenitor. In *Voll* the Supreme Court was called upon to determine the constitutionality of statutes (Criminal Practice Act, § 509, now Pen. Code, § 1271, and Criminal Practice Act, § 512, now Pen. Code, § 1272) making bail a matter of right before conviction and a matter of discretion after conviction. In holding the statutes constitutional the three-judge court rejected the argument that the language of the Constitution is sufficiently broad to embrace not only a case where no trial was had but also a case in which a conviction of an offense, less than capital in degree, has occurred. (At p. 31.) The opinion of Justice Wallace interprets the Constitution to mean that in declaring bail to be a matter of right the Constitution contemplated only those cases in which the guilt of the party had not been already judicially ascertained.[6] (At p. 32.) The opinion articulates that a defendant who has been convicted is presumed guilty upon the curious observation that the rule of absolute bail would bring about a result "that no convict could be punished for his ascertained crime if he had either wealth or friends; . . ." (At p. 32.) The opinion finds sustenance in the fact that at common law all applications for bail were addressed solely to the discretion of the judges and that the clause in the Constitution was only designed to alter the rule of the common law as to certain criminal cases before conviction. (At p. 32.)

It should be here noted that *Ex parte Voll* makes no reference to the debates in the California Constitutional Convention with respect to the subject provision of the Constitution. The convention of 1849, after accepting

---

[6]The same result was reached in *Ex parte Brown* (1885) 68 Cal. 176, 177, 182 [8 P. 829], interpreting Penal Code sections 1270, 1271 and 1272 subsequent to the adoption of the 1879 Constitution.

the provision prohibiting excessive bail, accepted a modification guaranteeing a right to bail in all but capital cases with the following explanation of the reasons for the modification: " 'It has been thought by some that the section [prohibiting excessive bail] which we have just adopted covers the entire ground; but in my opinion it does not. This section is part of the common law, *and as we have not adopted the common law,* and perhaps may not, I think it very necessary that such a section [guaranteeing the right to bail in all but capital cases] should be introduced, so that in all cases, except capital offenses . . . the party accused shall be entitled to bail. An innocent man may be kept in prison and refused bail, without such a provision as this.' " (Italics added; Report of the Debates in the Convention of Cal. on the Formation of the State Const., Sept. 28, 1849, at p. 239; see *In re Underwood, supra,* 9 Cal.3d 345, 350, fn. 6.) It should also be noted that the section providing bail in all but capital cases was reenacted in the 1879 Constitution without debate. (*In re Underwood, supra.*)

While the *Voll* case was pending for decision an application for bail pending appeal was presented to Justice Wallace in *Ex parte Hoge* (1874)[7] 48 Cal. 3, a case in which the defendant had been found guilty of the felony of assault with a deadly weapon with intent to do bodily injury. The same arguments were made in that case as had been made in *Voll,* i.e., that a prisoner not charged with a capital offense has an absolute constitutional right to be at large upon bail pending appeal. These arguments reiterated that the evident purpose of the framers of the Constitution was to abrogate the unbounded discretion which judges exercised at common law in granting or refusing bail. Justice Wallace refrained from expressing any views on the constitutional question in view of the pendency of *Voll* but concluded that the prisoner was "entitled to bail upon other grounds." (At p. 5.) These grounds turned upon the exercise of the discretion in allowing or refusing bail upon appeal as provided in the statute allowing bail on appeal. Justice Wallace pointed out that since the trial judge had the option of sending the petitioner to jail or merely inflicting a fine, the petitioner would have been entitled to bail as a matter of right if only a fine had been imposed. Accordingly, he reasoned that it would be an abuse of discretion not to admit the petitioner to bail since one convicted of the same crime but punished by a fine only would be at large while his appeal was pending. (At p. 6.)

---

[7]Although *Ex parte Hoge* is reported in the 1874 reports it was decided in November 1871. The reporter acknowledges the omission of the opinion from the previous reports. (See 48 Cal. 3.)

In *Hoge* we find the following pertinent observation: "Upon . . . an appeal, the ultimate question is nearly always as to the validity of the judgment under which the prisoner is to suffer; and it is certainly not consonant to our ideas of justice, if it can be prevented by legal means, that even while the question of guilt or innocence is yet being agitated in the form of an appeal, the prisoner should be undergoing the very punishment and suffering the very infamy which it was the lawful purpose of the appeal to avert. It would be somewhat akin to a practice of punishing the accused for his legal offense while the jury was yet deliberating upon the verdict." (48 Cal. 3 at pp. 6-7.)

Subsequent cases dealing with the discretion to be used in applications for bail pending appeal evolved the rule that judges should not exercise the power to grant bail after conviction of a felony except upon an affirmative showing of extraordinary circumstances. (*In re Pantages* (1930) 209 Cal. 535, 536 [291 P. 831]; *In re Ward* (1900) 127 Cal. 489, 490 [59 P. 894]; *Ex parte Turner* (1896) 112 Cal. 627, 629 [45 P. 571]; *Ex parte Smith* (1891) 89 Cal. 79, 80 [26 P. 638]; *Ex parte Brown, supra,* 68 Cal. 176, 183; *Ex parte Smallman* (1879) 54 Cal. 35, 36; *People* v. *Sullivan* (1952) 110 Cal.App.2d 4, 6 [242 P.2d 348] [cert. den., 345 U.S. 955 (97 L.Ed. 1376, 73 S.Ct. 936)]; *People* v. *Davis* (1945) 67 Cal.App.2d 837, 839 [155 P.2d 675]; *In re Burnette* (1939) 35 Cal.App.2d 358, 359 [95 P.2d 684]; *People* v. *Yant* (1938) 26 Cal.App.2d 124, 125 [78 P.2d 1042]; *In re Albori* (1928) 95 Cal.App. 42; 59 [272 P. 321]; *In re Ephraim* (1925) 73 Cal.App. 104, 105 [237 P. 801]; *People* v. *Ephraim* (1925) 72 Cal.App. 479, 481 [237 P. 801]; *People* v. *Eiseman* (1924) 69 Cal.App. 143, 149 [230 P. 669]; *In re Wilkins* (1924) 66 Cal.App. 754, 759 [226 P. 964]; *Matter of Application of Preciado* (1916) 30 Cal.App. 323, 328 [158 P. 1063]; *People* v. *Cornell* (1915) 28 Cal.App. 654, 656 [153 P. 726].)

The first perceptible change in the Supreme Court's evaluation of a defendant's right to bail pending appeal appears in *In re Brumback* (1956) 46 Cal.2d 810 [299 P.2d 217], wherein it is made clear that the primary purpose of bail, before and after conviction, is "practical assurance that defendant will attend upon the court when his presence is required." (At p. 813.) In that case the trial judge had refused to exercise his discretion because no extraordinary circumstances had been shown. The Supreme Court remanded the case to the trial court for the exercise of its discretion in the light of the primary purpose of bail as articulated in its opinion. Alluding to the "extraordinary circumstances" rule *Brumback* observes that it was one promulgated principally as an aid to the exercise of discretion of an appellate tribunal and that the absence of extraordinary circumstances does not necessarily preclude the granting of bail. (At pp. 813-815.)

The cardinal rule of the *Brumback* case that the primary purpose of bail, whether before or after conviction, is "practical assurance that defendant will attend upon the court when his presence is required" was reiterated in *In re Newbern* (1961) 55 Cal.2d 500, 504 [11 Cal.Rptr. 547, 360 P.2d 43]; *In re Petersen* (1958) 51 Cal.2d 177, 181 [331 P.2d 24]; and *In re Scaggs* (1956) 47 Cal.2d 416, 419 [303 P.2d 1009]. *Scaggs* specifically dealt with bail pending appeal. It unequivocally held that a defendant who has been convicted of a felony in a noncapital offense is not entitled to be admitted to bail as a matter of right but is compelled to address himself to the discretion of the court. (At p. 418.) It also held that the attendance of a defendant when his presence is required is not the only criterion for admission to bail on appeal but that other matters may be considered, one important consideration being whether there is any danger that, if released, he would continue to commit crime. (At p. 419.)[8] *Scaggs,* citing the *Voll* case as authority, observes that there is a difference in the status of a defendant before and after conviction and that upon conviction he loses the benefit of the presumption of innocence and is presumed to be guilty. (47 Cal.2d at p. 418.)

Two strong dissents were entered in *Scaggs.* Justice Carter interpreted *Brumback* to mean that a defendant convicted of a non-capital offense is entitled to bail pending appeal in a reasonable sum (47 Cal.2d at p. 425) and that "the only realm for the exercise of discretion in a case such as this is the amount which the trial judge believes to be commensurate with the risk assumed by the admission of the prisoner to bail, and not whether bail should be granted or refused." (47 Cal.2d at p. 426.) Justice Schauer, relying on article I, section 6 of the California Constitution and the *Brumback* case, concluded that the absolute denial of an order fixing bail constituted an abuse of discretion. (47 Cal.2d at p. 427.)

Such was the evolution of the judicial articulation prior to the Supreme Court's decision in *Underwood.* Although *Underwood* involves an application for bail prior to conviction and does not specifically concern itself with bail pending appeal, it does make certain pertinent holdings and observations that are applicable to admission to bail before and after conviction. Thus it is unequivocally stated as follows: "The purpose of bail is to assure the defendant's attendance in court when his presence is required,

---

[8]As additional factors upon which bail on appeal may be denied *Scaggs* alludes to the following: unfavorable recommendation of the probation officer; ample opportunity to place affairs in order; lack of economic hardship; and belief of the trial judge that no substantial errors in the trial of the case would be shown on appeal. (47 Cal.2d at p. 419.)

*whether before or after conviction.* [Citations.]" (Italics added; 9 Cal.3d at p. 348.) The principle is reiterated in *Boyle.* (11 Cal.3d at p. 169.) Among the cases cited by *Underwood* and *Boyle* as authority for this principle is *In re Brumback, supra,* 46 Cal.2d 810. It is significant to note that although *Brumback* states that the assurance of attendance is the "primary purpose of bail" *Underwood* and *Boyle* omit the use of the adjective "primary." This omission, in my opinion, is not inadvertent but intentional and results from the intended thrust of the *Boyle* and *Underwood* decisions whose holding is that the only purpose of bail is to assure the defendant's attendance in court when his presence is required and is not a means for punishing defendants or for protecting the public safety. (*Boyle,* 11 Cal.3d at p. 169; *Underwood,* 9 Cal.3d at p. 348.) *Boyle* and *Underwood* expressly negate the "public safety" exception recognized in *Scaggs* and by implication negate the additional factors alluded to in *Scaggs.*

I am, accordingly, persuaded that if the only purpose of bail is to assure attendance when the presence of the defendant is required both before and after conviction a trial court has no alternative but to admit a defendant to bail pending appeal in a noncapital felony case and that its discretion is limited to determining the amount of bail that will assure the defendant's attendance in court when his presence is required. Proceedings on application for bail should be conducted with this purpose in mind, and the bail fixed must not be excessive in relation to this purpose. I see no merit to the argument that the rule declared in *Boyle* and *Underwood,* insofar as bail on appeal is concerned, means that when bail is allowed its only purpose is to assure the defendant's attendance in court when his presence is required. This argument "puts the cart before the horse." If the only purpose of bail is to assure such attendance the *sine qua non* is that the defendant must be admitted to bail in an amount that will assure such presence.

A careful review of *Brumback* and *Scaggs* will disclose that in those cases the attention of the court was directed to section 1272 providing that pending appeal bail in felony cases, other than for capital offenses, is a matter of discretion, rather than to the restrictive language of article I, section 6 of the California Constitution. In *Underwood* and *Boyle,* on the other hand, the point of concentration is upon the specific provisions of the Constitution. Accordingly, since the clear import of *Underwood* and *Boyle* is that, except for capital cases, a defendant is entitled to bail both before and after conviction under the provisions of article I, section 6 of the California Constitution, any statutory provision contrary thereto must be declared to be unconstitutional.

In *In re Law, supra,* 10 Cal.3d 21, it is stated that article I, section 6

of the California Constitution "was intended to abrogate the common law rule that bail was a matter of judicial discretion by conferring an *absolute right* to bail except in a narrow class of cases." (Citing *Underwood* and *Voll*; italics added, at p. 25.) *Law*, in holding that a parolee under a parole hold status, was not entitled to bail under this constitutional provision, observes "that the right to bail, while absolute, pertains only to persons incarcerated on a charge of the commission of a criminal offense. [Citation.]" (At p. 25.) It should be observed that although *Law* cites *Voll* as authority for the proposition that the constitutional provision abrogated the common law rule that bail was a matter of judicial discretion, *Voll* does not paint with as broad a brush. As I read *Voll*, it purports to hold that the common law rule was not abrogated by the constitutional provision but was merely altered with respect to certain criminal cases before conviction. (41 Cal. at p. 32.)

This discussion leads full circle to *Voll* and Justice Wallace's dubious statement that the Constitution in declaring bail to be a matter of right contemplated only those cases in which the guilt of the party "had not already been ascertained" and that such guilt is "ascertained" for purposes of bail when a person has been convicted notwithstanding his conviction is not final because an appeal is pending. (41 Cal. at p. 32.) I think it is unfortunate that the declaration in *Voll*, that upon conviction a defendant loses the presumption of innocence and is presumed to be guilty, finds approval in *Scaggs* so as to make a difference for purposes of bail in the status of a defendant before and after conviction. It appears to me that it is more in keeping with our present day notions of justice and fair play to embrace Justice Wallace's observations in *Hoge* that "even while the question of guilt or innocence is yet being agitated in the form of an appeal, the prisoner should be undergoing the very punishment and suffering the very infamy which it was the lawful purpose of the appeal to avert." (48 Cal. at p. 7.)

Justice Wallace's rationale in *Voll* for the presumption of guilt upon conviction principle is that the rule of absolute right to bail after conviction would bring about the result "that no convict could be punished for his ascertained crime if he had either wealth or friends; for no mere pecuniary considerations could weigh against the alternative of a degrading punishment, at hard labor, for a crime involving moral turpitude. It would operate in practice as a mere money commutation for the infamous corporeal punishment which the law has denounced against the perpetration of the crime." (41 Cal. at p. 32.) This argument is clearly unsound because, as

indicated by *Underwood*, punishment has no relationship to the purpose of bail. Moreover, in actual practice the wealthy and prominent defendant is more apt to be admitted to bail pending appeal than the indigent or obscure defendant.

Appellant's petition for a hearing by the Supreme Court was denied July 31, 1974.